# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:12-CV-571-GCM-DCK

| | |
|---|---|
| JAMES M. NOLEN,              ) | |
|             ) | |
|      **Plaintiff,**     ) | |
|             ) | **MEMORANDUM AND** |
|     v.           ) | **RECOMMENDATION** |
|             ) | |
| CAROLYN W. COLVIN,[1]     ) | |
| **Acting Commissioner of Social Security,**     ) | |
|             ) | |
|      **Defendant.**     ) | |
|             ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 8) and Defendant's "Motion For Summary Judgment" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be underlined; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff James M. Nolen ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On March 11, 2009, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, alleging an inability to work due to a disabling condition beginning August 15, 2006.

---

[1] Carolyn W. Colvin is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

(Transcript of the Record of Proceedings ("Tr.") 14). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on July 8, 2009, and again after reconsideration on February 3, 2010. (Tr. 14, 61-64, 72-74). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough prior to the end of your insured period to be considered disabling. Your mental condition was not severe enough prior to the end of your insured period to be considered disabling. You were able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition prevented you from doing any of your past jobs, but it did not keep you from doing less demanding work. Based on your age, education, and past work experience, you could have done other work. Therefore, based on all of the medical and non-medical evidence, we have decided that you were not disabled on or before coverage ended according to the Social Security Act.

(Tr. 72).

Plaintiff filed a timely written request for a hearing on March 5, 2010. (Tr. 14, 80-81). On December 2, 2010, Plaintiff appeared and testified at a hearing before Administrative Law Judge Richard L. Leopold ("ALJ"). (Tr. 25-55). In addition, Janette Clifford, a vocational expert ("VE"), and Frederick R. Stann, Plaintiff's attorney, appeared at the hearing. (Tr. 14, 26).

The ALJ issued an unfavorable decision on February 24, 2011, denying Plaintiff's claim. (Tr. 11-23). Plaintiff filed a request for review of the ALJ's decision on March 4, 2011, which was denied by the Appeals Council on July 6, 2012. (Tr. 1-3). The February 24, 2011 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on September 4, 2012. (Document No. 1). On September 5, 2012, the undersigned was assigned to this case as the referral magistrate judge. Plaintiff's "Motion For Summary Judgment" (Document No. 8) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 9) were filed January 24, 2013; and Defendant's "Motion For Summary Judgment" (Document No. 12) and Defendant's "Memorandum In Support Of Summary Judgment" (Document No. 13) were filed April 25, 2013. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is appropriate.

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 15, 2006, and the Plaintiff's date last insured, June 30, 2009.[2] (Tr. 14, 16). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from August 15, 2006, through the date last insured, June 30, 2009. (Tr. 14, 23).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1)    whether claimant is engaged in substantial gainful activity -
> if yes, not disabled;

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

> (2)     whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3)     whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4)     whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5)     whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 22-23).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since August 15, 2006, his alleged disability onset date. (Tr. 16). At the second step, the ALJ found that organic mental disorder, anxiety disorder, personality disorder and a history of alcohol abuse, were severe impairments. (Tr. 16).[3] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 18).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform medium work activity, with the following limitations:

> lifting and carrying of 50 pounds occasionally, 25 pounds frequently, standing and/or walking about 6 hours in an 8 hour workday and sitting about 6 hours in an 8 hour workday with

---

[3]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

occasional ladder, rope and scaffold climbing. Moreover, the claimant has non-exertional limitations causing moderate limitations in the claimant's ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors and respond appropriately to changes in the work setting. As a result, the claimant is limited to unskilled work involving simple, routine and repetitive tasks.

(Tr. 20). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id. The ALJ further opined that "he considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. Id.

At the fourth step, the ALJ found that Plaintiff could perform his past relevant work as a meat cleaner. (Tr. 22-23). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 15, 2006, and the date of his decision, February 24, 2011. (Tr. 23).

Plaintiff on appeal to this Court makes the following assignments of error: (1) that the ALJ violated 20 C.F.R. § 404.1527 by failing to set forth good cause for his rejection of the opinions of Plaintiff's treating therapist; (2) that the ALJ failed to comply with C.F.R. § 404.1527 by failing to state what weight, if any, was given to the opinion of the consultative

physicians;  (3) that the ALJ violated SSR 96-9p and 20 C.F.R. § 404.1527(e) in failing to provide reasons for his implied rejection of the contrary opinions of the non-examining State agency medical consultant;  (4) that the ALJ erred by summarily concluding that Plaintiff can return to his past relevant work without providing specific findings and analysis regarding the physical and mental demands of this work;  and (5) that the ALJ's RFC finding failed to comply with SSR 96-8p.  (Document No. 9, p.1-2).  The undersigned will discuss each of these contentions in turn.

### A.    Treating Therapist Opinion

In his first assignment of error, Plaintiff argues that the ALJ violated 20 C.F.R. § 404.1527 by failing to set forth good cause for his rejection of the opinions of Plaintiff's treating therapist, Mr. Dewey McHartz.  (Document No. 9, pp.9-13).  In particular, Plaintiff contends that the ALJ did not mention or state what weight was given to the "Attending Physicians Statement" completed by Mr. McHartz.  (Document No. 9, p.10).  Plaintiff lists the factors that should be considered in weighing any medical source opinion, whether a treating physician opinion or not. (Document No. 9, 10); see 20 C.F.R. § 404.1527(c).  Overall, Plaintiff's argument focuses on the regulations governing the opinions of treating physicians or sources and how an ALJ should weigh such opinions.

Defendant argues that the ALJ had no duty to explain the weight given to Mr. McHartz's opinion, as it is an unexplained opinion from a non-medical source, addressing a time period not at issue in the ALJ's opinion.  (Document No. 13, p.6).  Specifically, Plaintiff did not meet with Mr. McHartz until after the relevant time period, nor did Mr. McHartz provide opinions referring to the relevant time period.  (Document No. 13, p.7).  Defendant also claims that the relationship between Plaintiff and Mr. McHartz may not even rise to the level of a treatment relationship, as

they only met on three occasions over a six month period. (Document No. 13, p.8). Further, Defendant contends that because Mr. McHartz did not provide treatment notes to document the nature or extent of any treatment, it is questionable whether he could even be considered an "other source." (Document No. 13, p.8).

The undersigned is not persuaded that the ALJ erred in not considering or explaining his rejection of Mr. McHartz's opinions. Plaintiff's reliance on 20 C.F.R. § 404.1527(a)(2) is misplaced. This regulation defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s) . . . . " 20 C.F.R. § 404.1527(a)(2). As this suggests, there is a difference between acceptable and non-acceptable medical sources ("other sources"). "Acceptable medical sources" include licensed physicians, psychologists, and various other sources; but, it does not include therapists, who instead are under the "Other Sources" categorization. SSR 06-03p. This distinction has important implications for Plaintiff's argument. Only "acceptable medical sources" can give medical opinions or be considered treating sources, whose medical opinions are entitled to controlling weight. Id.; see 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); see also Turner v. Astrue, 2013 WL 1182681, at *3 (W.D.N.C. Feb. 12, 2013). Much of Plaintiff's argument concerns an ALJ's obligations regarding treating sources, and since Mr. McHartz is not a treating source, these portions of Plaintiff's argument are irrelevant.

Instead, Mr. McHartz should be evaluated and considered as an "other source," as explained in SSR 06-03p. "The weight to which such evidence [from other sources] may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . . ."

SSR 06-03p. Other sources are "valuable sources of evidence for assessing impairment severity and functioning" and can, in certain situations, "outweigh the opinion of an acceptable medical source." Id. For example, "[I]t may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." Id. However, information from "'other sources' cannot establish the existence of a medically determinable impairment . . . there must be evidence from an 'acceptable medical source' for this purpose." SSR 06-03p. The weighing of other sources is therefore determined on a case-by-case basis.

In Craig v. Chater, for example, the plaintiff argued that the ALJ erred in not expressly considering her physical therapist's report. 76 F.3d 585, 590 (4th Cir. 1996). As the court noted, a physical therapist is an "other source," whose opinions are entitled to significantly less weight. Id. Because the physical therapist's examination was based on only one visit and contradicted by a physician, the ALJ did not err by not expressly considering the report. Id. As this case and the above regulations show, the number of examinations and the explanation supporting an opinion are important in deciding whether to consider an "other source's" opinion.

Mr. McHartz saw Plaintiff on a very limited basis, meeting on only three occasions. (Document No. 13, pp.6-7). Most importantly, Mr. McHartz did not even treat Plaintiff during the relevant time period, nor does he offer opinions about the relevant time period. (Tr. 467). Further, Mr. McHartz did not provide his treatment notes, and therefore the ALJ had limited supporting evidence to use in evaluating Mr. McHartz's opinions. (Tr. 467). Instead, the ALJ had various other medical sources to consider, such as the consultative physicians and the state agency medical consultant, all of which are well-documented in his opinion. (Tr. 16-23).

Courts have consistently upheld ALJ rejections of treating physician opinions that are not supported by substantial evidence. See <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001). It follows that ALJs may likewise reject the contradicted testimony of non-acceptable medical sources. See <u>Turner v. Astrue</u>, 2013 WL 1182681, at *3 (W.D.N.C. Feb. 12, 2013) (stating ALJ had "even greater leeway to discount the report" of a non-treating, non-physician opinion than that of a treating physician). The undersigned finds no error in the ALJ's decision to not rely on Mr. McHartz's opinions, as the record sufficiently supports a decision to reject those opinions.

The undersigned is likewise not persuaded that the ALJ was required to provide a detailed explanation for this rejection. The regulations cited by Plaintiff regarding explanation of the weight given to an opinion refer to "treating sources" and "treating physicians." (Document No. 9, p. 10-11). See 20 C.F.R. § 404.1527(c)(2), SSR 96-2p. Mr. McHartz is not a treating physician, nor did he treat Plaintiff during the relevant time period, so it appears these regulations are not applicable here. Plaintiff fails to set forth any law requiring an ALJ to explicitly describe the weight afforded to every opinion in a case. Based on the evidence of record, the ALJ was justified in not considering Mr. McHartz's opinion and in not detailing his decision to do so, and the undersigned finds no error.

### B.    Consultative Physicians' Opinions

Next, Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 by not stating what weight, if any, was given to the opinion of the consultative physicians, Dr. Whitaker and Dr. Duszlak. (Document No. 9, pp.13-15). The regulations provide that every medical opinion will be evaluated (unless a treating source's opinion is given controlling weight) and give several factors for consideration in deciding how much weight to give an opinion. 20 C.F.R. §§ 404.1527(b), 404.1527(c)(2). Plaintiff interprets this regulation as not only requiring

consideration of each opinion, but also requiring a statement of how much weight is given to each opinion. (Document No. 9, p.13). Plaintiff argues that the ALJ did not state what weight was given to Dr. Whitaker or Dr. Duszlak's opinions, and therefore remand is necessary. (Document No. 9, p.15).

Defendant denies that there was any reversible error in the ALJ's handling of the medical opinions. (Document No. 13, p.9). Regarding Dr. Duszlak, Defendant argues that his opinion was factored into the ALJ's RFC assessment, as the ALJ gave great weight to Dr. Fox, who had reviewed Dr. Duszlak's opinion. (Document No. 13, p.9). Defendant also argues that Plaintiff failed to explain how the ALJ's omission of the exact weight given to Dr. Duszlak's opinion causes any harm. (Document No. 13, p.10). According to Defendant, because a showing of harm is necessary for remand, this omission is essentially a harmless error. (Document No. 13, p.10) (citing Dover v. Astrue, 2012 WL 1416410, at *5 (W.D.N.C. Mar. 19, 2012)).

Defendant acknowledges that the ALJ erred in failing to explicitly identify the weight he gave to Dr. Whitaker's opinion, but argues that remand is not required for two reasons. (Document No. 13, p.10). First, Dr. Whitaker's opinions were "only marginally more limiting than the ALJ's RFC finding." (Document No. 13, pp.10-11). And second, Dr. Whitaker's opinions were reviewed by Dr. Levin, whose opinion the ALJ gave great weight to. (Document No. 13, p.11). Defendant contends that Dr. Levin's review meant the ALJ effectively adopted a medical opinion that considered Dr. Whitaker's opinions. (Document No. 13, p.11). Although there were differences between Dr. Levin and Dr. Whitaker's opinions, Defendant argues that the ALJ was entitled to weigh those opinions and rely on the opinion he found most consistent with the objective evidence. (Document No. 13, p.11).

Although the ALJ was not explicit in the weight given to the opinions of Dr. Duszlak or Dr. Whitaker, the undersigned does not believe remand is necessary. The regulations state "we will evaluate every medical opinion we receive" and lays out several factors to consider in such evaluations. 20 C.F.R. § 404.1527(c). "Generally, an ALJ must explicitly state the weight given to all relevant evidence, including medical source opinions." Wade v. Colvin, 2013 WL 1621971, at *3 (M.D.N.C. April 15, 2013), (citing Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir.1984)). "However, no principle of administrative law or common sense requires a remand in quest of a perfect opinion from an ALJ." Wade, 2013 WL 1621971, at *3, (citing Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.1989)); see also Botta v. Barnhart, 475 F.Supp.2d 174, 188 (E.D.N.Y.2007).

Several cases have denied remand where the weight given to an opinion by the ALJ can be ascertained and the omission was harmless. In Wade, for example, the ALJ failed to explicitly state the weight given to a physician's opinion, but it was clear from the ALJ's decision that he carefully reviewed the physician's opinion and expressly weighed those opinions in light of another physician's opinions. Id. at *3. Based on these facts and substantial evidence supporting the ALJ's decision, the reviewing court found remand was not necessary. See Botta, 475 F.Supp.2d 174. In another case, the ALJ did not explicitly state the weight given to an examining psychologist's opinion, but it was clear the ALJ gave great weight to the opinion. Dover v. Astrue, 2012 WL 1416410, at *5 (W.D.N.C. March 19, 2012).

Remand is likewise unnecessary here. First, the ALJ clearly discussed Dr. Whitaker's examination of Plaintiff, noting that Dr. Whitaker diagnosed Plaintiff with status post myocardial infarction and coronary artery disease, chronic low back pain and depression. (Tr. 17) (citing Tr. 350-54). Dr. Whitaker examined Plaintiff for his physical impairments, and therefore his

opinion is not relevant for the mental impairments or limitations addressed by the ALJ. (Tr. 350). The ALJ stated that he considered Plaintiff's above physical impairments, but determined they were adequately treated, did not impose significant work-related limitations, and therefore were non-severe impairments. (Tr. 18). This opinion is supported by the objective medical evidence, which consistently showed improvement of Plaintiff's physical conditions, and also by the opinion of Dr. Ajay S. Bajwa, who noted that Plaintiff was asymptomatic and stable on various occasions. (Tr. 18).

Further, the portions of Dr. Whitaker's assessment cited by Plaintiff in his brief are not completely contradicted by the ALJ's findings. (Document No. 9, p. 13-14). Dr. Whitaker opined that Plaintiff could be expected to stand or walk four hours in an 8-hour work day; that he was not limited in the number of hours he could sit in an 8-hour workday or in reaching, handling, feeling, and grasping large and small objects; that Plaintiff could occasionally lift and carry 50 pounds; and that limitations on bending, stooping, and crouching *could* be expected. (Document No. 9, p. 14) (Tr. 354) (emphasis added). The ALJ's opinion only differed from these opinions in that the ALJ found Plaintiff could stand and/or walk for six hours a day and only found limitations related to climbing. (Tr. 20). As Defendant states, "Dr. Whitaker's opinions were only marginally more limiting than the ALJ's RFC finding." (Document No. 13, 10-11). Further, the differences between the ALJ's and Dr. Whitaker's opinions can be explained by other medical evidence. For example, consistent with the ALJ's finding, Dr. Levin opined that Plaintiff could stand and/or walk for about six hours in an 8-hour workday. (Tr. 375). Additionally, the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were

inconsistent with the RFC assessment was also probably a factor in these determinations. (Tr. 21).

Second, the ALJ also clearly considered the opinions of Dr. Duszlak, as evidenced by the discussion of those opinions contained in the ALJ's opinion. (Tr. 16-17, 21-22). In fact, several of the ALJ's findings, such as Plaintiff's ability to perform simple and repetitive tasks and likely benefit from treatment, are consistent with Dr. Duszlak's opinions. (Tr. 22). Many of Dr. Duszlak's opinions also support the finding of "not disabled." For example, Dr. Duszlak concluded that Plaintiff's panic and obsessive/compulsive disorders were treatable and the possibility of low average intelligence would not preclude work activity, though it would limit the types of suitable jobs. (Tr. 21) (Tr. 347-48). She also believed he could manage funds if awarded to him and could accept instructions, though he may have difficulty in remembering them. (Tr. 348). Despite acknowledging difficulties such as these, Dr. Duszlak did not provide any opinions that indicated Plaintiff could not return to work or that directly contradicted the ALJ's findings.

Although the ALJ does not explicitly state the weight given to Dr. Duszlak's opinion, it was clearly considered, as required by 20 C.F.R. § 404.1527, and apparently given more than minimal weight. Perhaps failing to state the exact weight given would be a reason for remand if the ALJ's opinion contradicted Dr. Duszlak's opinion and the substantial weight of the evidence; however, that is not the case here. Considering the ALJ's consistency with and discussion of Dr. Duszlak's opinion, the undersigned does not feel that remand is necessary.

### C.    Non-examining State Agency Medical Consultant Opinions

In his third assignment of error, Plaintiff argues that the ALJ violated SSR 96-6p and 20 C.F.R. § 404.1527(e) and committed reversible error by failing to provide any reasons for an

implied rejection of the contrary opinions of the non-examining State agency medical consultant, Dr. Levin. (Document No. 9, pp.15-17). Plaintiff correctly states that ALJs are required to consider the opinions of state agency medical consultants and explain the weight given to these opinions in their decisions. (Document No. 9, p.15) (citing SSR 96-6p). The ALJ stated he gave great weight to the opinion of Dr. Levin, but Plaintiff contends there is an inconsistency between the ALJ and Dr. Levin's opinions. (Document No. 9, pp.15-17) (Tr. 22). Plaintiff argues that because the ALJ failed to provide any reasons for this conflict, he has violated 20 C.F.R. § 404.1527(e) and SSR 96-6p and remand is necessary. (Document No. 9, p.16). In particular, the ALJ found that Plaintiff could perform his prior work as a "meat cleaner," which under DOT number 381.687-018 and the Selected Characteristics of Occupations, includes *frequent* stooping. (Document No. 9, p.16) (Tr. 22). According to Plaintiff however, Dr. Levin opined that Plaintiff could only *occasionally* "balance" and "stoop" "due to limping gait." (Document No. 9, p.16) (citing Tr. 376). Plaintiff argues that because of this inconsistency regarding stooping, the ALJ impliedly rejected Dr. Levin's opinion without reason. (Document No. 9, p.16).

However, the record reveals no such inconsistency. Instead, Dr. Levin marked that Plaintiff *could* perform frequent stooping in his Physical Residual Functional Capacity Assessment. (Tr. 376). The transcript page cited by Plaintiff (Tr. 376) provides no basis for Plaintiff's argument in regards to stooping, but instead shows that the ALJ's findings are consistent with Dr. Levin's opinions in that matter. (Document No. 9, p.16)

Although Plaintiff also mentions balancing, he is not as specific in identifying inconsistencies regarding that. (Document No. 9, p.16). He cites Dr. Levin's Physical Residual Functional Capacity Assessment, which states Plaintiff can only perform occasional balancing,

and also cites the ALJ's RFC assessment, which does not impose any limitations on balancing. (Document No. 9, p.16), (Tr. 19-20, 376). Defendant considers this apparent discrepancy in balancing ability to only be a "minor discrepancy," which does not require remand. (Document No. 13, p.12). According to Defendant, the ALJ's lack of balancing limitations does not matter, because under DOT number 381.687-018 Plaintiff's past relevant work as a meat cleaner only requires occasional balancing. (Document No. 13, p.12). Therefore, if on remand the ALJ stated that Plaintiff was in fact limited to only occasional balancing (as Dr. Levin suggested), Plaintiff would still be able to perform his past relevant work and therefore not be disabled. (Document No. 13, p.12). Thus, according to Defendant, this omission amounts to no more than harmless error. (Document No. 13, p.12).

The undersigned does not believe Plaintiff's alleged inconsistencies require remand. As stated, there are no inconsistencies in regards to Plaintiff's stooping ability. The alleged inconsistency regarding balancing appears inconsequential, as it would not affect Plaintiff's ability to perform his past relevant work.

### D.      Ability to Perform Past Relevant Work

Plaintiff next argues that the ALJ erred by summarily concluding that Plaintiff can return to his past relevant work without providing specific findings or analysis regarding the physical and mental demands of this work, as required by SSR 82-62. (Document No. 9, pp.17-20). Such analysis would fall within step four of the sequential evaluation process and include three specific findings of fact: a finding of fact as to the individual's RFC; a finding of fact as to the physical and mental demands of the past job; and a finding of fact that the individual's RFC would permit a return to the past job. (Document No. 9, p.18); see SSR 82-62.

In particular, Plaintiff argues that the ALJ failed to properly weigh all the medical opinions (as detailed above) and therefore his RFC finding is not based on substantial evidence. (Document No. 9, p.19).  According to Plaintiff, the ALJ also did not review or discuss the mental and physical demands of Plaintiff's prior relevant work, other than using generic terms such as "medium" and "unskilled."  (Document No. 9, p.19).  Plaintiff asserts that because phase one was not properly completed, neither were phases two or three.  (Document No. 9, p.19). Overall, Plaintiff's argument is essentially that the ALJ did not fully explain his decision and instead summarily concluded that Plaintiff could perform medium and unskilled work. (Document No. 9, p.19).

Defendant contends that substantial evidence supports the ALJ's determination that Plaintiff can perform his past relevant work.  (Document No. 13, pp.14-15).  In particular, Defendant argues that Plaintiff bears the burden of proving that he cannot return to his past work, both as he performed it and as done in the national economy.  (Document No. 13, p.14).  The ALJ relied on vocational expert testimony in determining the skill and exertion level of Plaintiff's past work, as permitted by the regulations.  (Document No. 13, p.14) (Tr. 53). According to Defendant, Plaintiff has identified no flaw in this testimony or in the ALJ's RFC determination, and therefore, the ALJ decision should be affirmed.  (Document No. 13, p.15).

The undersigned is satisfied that the ALJ met his obligations under SSR 82-62 in determining and explaining that Plaintiff could perform his past relevant work.  As stated above, the ALJ must make a finding of fact as to the individual's RFC, a finding of fact as to the physical and mental demands of the past job, and a finding of fact that the individual's RFC would permit a return to his past job.  SSR 82-62.  The ALJ's analysis must be sufficient to

allow for meaningful judicial review of the decision. See Breeden v. Astrue, 2013 WL 865977, at *2-3 (W.D.Va. March 7, 2013).

Regarding the first finding of fact, the ALJ found that Plaintiff had the RFC to perform medium work, with specific physical and mental limitations included in the opinion. (Tr. 19-20). In making this finding, the ALJ clearly considered the various witnesses' testimonies, including those of Plaintiff's friends, former employers, and medical examiners. (Tr. 19-22). In addition to detailing many of these opinions and testimonies, the ALJ noted that "no treating or examining physician has offered the opinion that the claimant is unable to work." (Tr. 22). As stated in the rejection of Plaintiff's previous arguments, the undersigned is not convinced that the ALJ failed to properly weigh all the medical opinions. Instead, the undersigned finds that the ALJ's RFC findings are supported by substantial evidence. (Tr. 19-22).

The second required finding of fact is the physical and mental demands of Plaintiff's past job. Plaintiff's past relevant work is as a meat cleaner. (Tr. 22-23). Plaintiff is correct that an ALJ cannot conclude, without rationale, that a claimant can perform his past work. (Document No. 9, p.18), see SSR 82-62. Plaintiff cites Hines v. Barnhart as support for his claim that generic descriptions are insufficient for describing the requirements of past relevant work. (Document No. 9, pp.19-20). In Plaintiff's case however, the ALJ relied on VE testimony, which was consistent with the DOT and Selected Characteristics of Occupations, in making his findings regarding Plaintiff's ability to return to his past relevant work. (Tr. 23, 53). This evidence distinguishes this case from Hines, since neither a VE nor the DOT was referenced in that case. Although, as that case stated, generic descriptions alone may be insufficient, when combined with other evidence and testimony, an ALJ may meet the requirements of SSR 82-62. The present case is more like King v. Astrue, in which the ALJ relied on VE testimony and the

DOT in making his findings. Id., 2011 WL 6032707, at *6 (W.D.N.C. May 24, 2011). The court noted that it is a plaintiff's burden to establish the exertional and nonexertional demands of his past relevant work and the plaintiff had not identified any error in the VE testimony relied on by the ALJ. Id.

In this case, Plaintiff has likewise not pointed to any error in the VE testimony relied on. The VE testified that Plaintiff worked as a cleaner, DOT number 381.687-18, which is medium in exertion with an SVP of 2. (Tr. 53). The VE testimony and related testimony regarding Plaintiff's past work supports the ALJ finding that work as a meat cleaner is medium and unskilled. The undersigned believes that, in light of the evidence supporting the ALJ's finding, the analysis in his opinion satisfies the second required finding of fact.

The final finding an ALJ must make is whether the Plaintiff can return to his past relevant work based on his RFC. The ALJ concluded Plaintiff's mental limitations would not interfere with his ability to perform unskilled work and therefore found Plaintiff could return to work as a meat cleaner. (Tr. 23). The ALJ considered the evidence regarding Plaintiff's mental limitations, as shown by the discussion of the various testimonies at the hearing and his conclusion that Plaintiff could not perform high stress or complex work. (Tr. 22). The ALJ also noted that Plaintiff's testimony was not credible to the extent it was inconsistent with the objective medical evidence and that no treating or examining physician opined that claimant was unable to work. (Tr. 22). The ALJ's finding on this matter is therefore clearly explained and supported by substantial evidence.

### E.    RFC Compliance with SSR 96-8p

Finally, Plaintiff argues that the ALJ failed to comply with SSR 96-8p and therefore erred in finding that Plaintiff can return to his past relevant work. (Document No. 9, p.20). Plaintiff

argues that the ALJ summarily concluded Plaintiff could perform medium work, although SSR 96-8p requires a function-by-function analysis when determining RFC. (Document No. 9, pp.20-21). In particular, Plaintiff contends that the ALJ should have considered each exertional function separately, as well as the nonexertional capacities. (Document No. 9, pp.21-22).

Defendant rejects this argument, claiming that the ALJ is not required to provide a function-by-function assessment of Plaintiff's RFC, citing numerous cases supporting this position. (Document No. 13, p.12). According to Defendant, Plaintiff failed to identify any specific limitation, other than balancing, that the ALJ erroneously excluded. (Document No. 13, p.13). Because Plaintiff has not presented evidence contradicting the ALJ's decision, Defendant states that the ALJ did not have to list all of the functions Plaintiff could perform without limitation. (Document No. 13, p.13).

As Defendant correctly points out, courts have consistently rejected the argument Plaintiff puts forth. (Document No. 13, p.13). In King v. Astrue, the plaintiff argued that the ALJ's decision should be reversed because the ALJ did not properly conduct a function-by-function analysis of his RFC. 2011 WL 6032707, at *3 (W.D.N.C. May 24, 2011). However, the state agency reviewing physicians had conducted function-by-function assessments of the plaintiff, finding no limitations other than a limitation to medium work. Id. "Because the ALJ based his assessment of Plaintiff's RFC on the function-by-function assessment of the state agency reviewing physicians, the ALJ's RFC assessment complied with SSR 96–8p." Id.; see also Hall v. Astrue, 2012 WL 1313242, at *5 (W.D.N.C. March 26, 2012) ("Here, the ALJ based his RFC, in part, on the function-by-function analysis of the state agency reviewing physicians. By doing so, the ALJ satisfied the requirements of SSR 96–8p."). This Court further noted that an ALJ is not required to list all of the functions a plaintiff can perform without limitation, and

the plaintiff failed to identify any additional limitation which the ALJ should have included in his opinion. Id., (citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)).

The undersigned finds King to be instructive here. Dr. Levin, the non-examining state agency medical consultant, completed a Physical Residual Functional Capacity Assessment of Plaintiff, which the ALJ relied on in his opinion, much like in King. (Tr. 374-381). And, as previously stated, the ALJ's findings are supported by other substantial evidence, such as the objective medical evidence and hearing testimony. Plaintiff also failed to identify any specific limitations that the ALJ should have included. "Where, as here, 'Plaintiff has failed to present evidence that contradicts the ALJ's decision, the Plaintiff's contention that the ALJ's decision should be remanded is unavailing.'" King, (citing Lemken, 2010 WL 5057130 at *8).

## IV.     CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.     RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 8) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 12) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI.   TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: July 25, 2013

David C. Keesler
United States Magistrate Judge